

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 3914 |
| | ) | |
| FOSTER BANCSHARES, INC d/b/a, | ) | |
| FOSTER BANK | ) | |
| | ) | |
| Defendant / Third Party Plaintiff, | ) | |
| | ) | |
| SUNJIN CHOI, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Wachovia Bank, N.A. ("Wachovia"), a North Carolina corporation with its principle place of business in North Carolina, filed suit on June 9, 2004 invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, against defendant Foster Bankshares, Inc., a Delaware corporation doing business in Illinois as Foster Bank ("Foster"), seek a declaratory judgment that Foster breached it warranty to Wachovia. (Dkt. No. 1). Foster filed a third-party complaint on July 12, 2004 against third-party defendant, Sunjin Choi Choi, ("Choi"), an Illinois resident. (Dkt. No. 3). Wachovia and Foster have filed the present cross motions for summary judgment on April 29, 2005 and May 2, 2005. (Dkt. Nos. 21, 24). For the reasons set forth below, this court grants Wachovia's motion for summary judgment and denies Foster's motion for summary judgment.

## BACKGROUND

This litigation is between the two primary banks involved in the processing and payment of a fraudulent check. The issue presented by the case is the responsibility to be borne between them.

A company called MediaEdge, which is not a party to this case, issued check number 400-413142 on November 13, 2002 in the amount of $133,026.00. (Dkt. No. 23 at ¶ 9). MediaEdge's check was drawn on its account with Wachovia and was made payable to CMP Media Inc. (*Id.*) That check was intercepted and the check, or a copy of the check, was altered. The check's payee was changed from CMP Media Inc to Sunjin Choi Choi. (*Id.*) The altered check, or a copy of the check, was deposited into Choi's account at Foster and then presented to Wachovia for payment. (*Id.* at ¶ 12-13). Wachovia paid Foster from MediaEdge's account. (*Id.*) Wachovia and Foster later learned of the alleged theft of the check when CMP Media Inc., the intended payee of the check, failed to receive the payment and notified MediaEdge in January 2003. (*Id.* at 15).

MediaEdge has sued Wachovia in New York seeking reimbursement. Wachovia, in turn, is suing Foster for reimbursement in light of MediaEdge's suit. Wachovia seeks from this court a declaration that Foster is liable for the original amount of the check of $133,036.00 plus interest, costs and fees including the attorney's fees incurred by Wachovia in defending in the New York suit against MediaEdge. Foster argues that Wachovia must bear the loss and filed a cross-motion for summary judgment on May 2, 2005. (Dkt. No. 24).

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Exercise Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

### A. Foster's Failure to Comply with Local Rule 56.1 and Case Management Procedures

Before proceeding to the substance of the motions, the court must discuss Foster's failure to follow the requirements of Local Rule 56.1 and this court's case management procedures. Both the local rules and the court's case management procedures are located on the court's website. *See also Malec v. Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000) (discussing the

requirements of Local Rule 56.1).

The court's case management procedure requires a motion for summary judgment, memorandum, Rule 56.1 statement and exhibits to be provided in separate documents filed separately from one another. Foster's submissions are combined together and do not comply with the court's requirements.

Foster's failure to follow Local Rule 56.1 is more significant. "A district court is entitled to expect strict compliance with [Local] Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The result of a failure to follow Local Rule 56.1 when responding to the opposing party's statement of facts can be dramatic. The failure to properly respond results in admission of other party's facts for the purposes of evaluating summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "[I]mproper denials ... and a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Id.* (citations omitted). "A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary material justifying the denial." *Malec*, 191 F.R.D. at 584.

Foster's response to Wachovia's statement of facts of May 20, 2005 (Dkt. No. 29), does not comply with the requirements of Local Rule 56.1. The statement contains general denials and does not contain specific citations to documents in the record that demonstrate a genuine issue of material fact. Foster does provide a better effort of citing to evidence in the record when it provides its own statement of undisputed facts in support of its motion for summary judgment. (Dkt. No. 24). However, Foster's statement of undisputed facts in support of its own motion for summary judgment does not replace or supercede its required effort under Local Rule 56.1 when

4

responding to Wachovia's statement of facts.

Foster also engages in factual and legal argument in its Local Rule 56.1 statement and response to Wachovia's Local Rule 56.1 statement. "The purpose of the 56.1 statement is to identify for the court the evidence supporting a party's factual assertions in an organized manner ... it is not intended as a forum for factual or legal argument. *Malec*, 191 F.R.D. at 585. The court will, therefore, disregard the improperly presented legal and factual arguments made by Foster in its Local Rule 56.1 materials.

B. The Parties' Substantive Arguments

As a preliminary matter, the court must consider the choice of law question raised by this litigation because Wachovia is a North Carolina bank and Foster is an Illinois bank. "When sitting in diversity, a federal court must apply the conflict of laws principles of the state in which it sits." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank*, 702 F. Supp. 652, 656 n.1 (N.D. Ill. 1988) (citing *Klaxon Co. v. Stentor Elec. Mfr. Co.*, 313 U.S. 487, 496 (1941); *Travelers Ins. Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1051 (7th Cir. 1988)). Under Illinois choice of law rules, "the liability of a bank for action or non-action with respect to an item handled by it for purpose of presentment, payment or collection is governed by the law of the place where the bank is located." 810 ILCS 5/4-102; *see e.g., LifeUSA Ins. Co. v. Continental Bank, N.A.*, No. 93 C 0839, 1996 WL 18974, at *1 n.1 (N.D. Ill. Jan. 18, 1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 702 F. Supp. at 656 n.1. The alleged bad acting third party, Choi, presented the check at issue in this case at Foster's branch in Niles, Illinois. Consequently, Illinois substantive law governs this case.

The Illinois Uniform Commercial Code, ("Illinois Code"), modeled after the Uniform

5

Commercial Code, ("UCC"), regulates the obligations of the parties in this case. This area of law is based on the rule first announced in the English case of *Price v. Neal*. 3 Burr. 1354 (1762); *see Clean World Eng'g, Ltd. v. MidAmerican Bank, FSB*, 793 N.E.2d 110, 117 (Ill. App. Ct. 2003). The principle from *Price* is that the party in the better position to identify the fraud and prevent the loss is also the party who should bear the risk of loss.

The drawee bank (Wachovia), bears the risk of loss when the drawer's (MediaEdge's) signature is forged. *Id.* at 117. The drawer, because of its relationship with the drawee, should know the drawee's authorized signature and is therefore in the best position to identify and reject a check with a forged drawee's signature.

On the other hand, the first payor (Foster), bears the risk of loss when the payee's (CMP Media Inc's), signature is forged. *Id.* The risk of loss is on the first payor because that individual actually took the check from the bad acting third-party and had the opportunity to challenge the forged payee's signature.

This case does not fall directly into either of these two situations. The bad act was the alleged altering of the payee's name from CMP Media Inc to Sunjin Choi Choi. The Illinois Code and the UCC, however, contain additional provisions that address this issue. Code §§ 3-417 and 4-208 detail the presentment warranties for negotiable instruments and bank deposits and collections. 810 ILCS 5/3-417; 810 ILCS 5/4-208. Under the provisions, the warranties were made by Foster when it presented the check to Wachovia.[1]

---

[1] One of the arguments raised by Foster is that there was no direct transaction between Foster and Wachovia because Foster transferred the check through an intermediary bank. The question of whether the check went through an intermediary bank is irrelevant because the presentment warranties extend to both the party presenting the check for payment and the previous transferor. 810 ILCS 5/3-417(a)(i),(ii); 810 ILCS 5/4-208(a)(i)(ii).

The specific warranty made by Foster pursuant to the Illinois Code is that the "draft (the check) has not been altered." §§ 3-417(a)(2), 4-208(a)(2). Wachovia argues that Foster breached this warranty because the check at issue was in fact altered to make it payable to Choi instead of the proper payee of CMP Media Inc. Foster argues that it cannot be held liable for breaching the presentment warranty because Wachovia cannot prove that the check was not a counterfeit or forged check.

This court agrees with Wachovia that the check was altered and that Foster breached it presentment warranty under §§ 3-417(a)(2) and 4-208(a)(2). "An alteration means an unauthorized change in an instrument that purports to modify in any respect the obligation of a party." 810 ILCS 5/3-407(a)(i). That happened in this case. The check was altered when the payee's name was changed from CMP Media Inc to Sunjin Choi Choi. The Illinois Code and UCC have allocated the risk of loss to Foster in this situation through the presentment warranties. *Firststar Bank N.A. v. Wells Fargo Bank, N.A.*, No. 02 C 186, 2004 WL 1323942, at *8 n.8 (N.D. Ill. June 14, 2004) (citing *Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond*, 338 F.3d 318 (4th Cir. 2003)). This is not a forgery case because Wachovia was not in a better position to identify the fraud or prevent the loss. Therefore, this court must enforce the allocation of liability established in the presentment warranties under §§ 3-417(a)(2) and 4-208(a)(2) and hold Foster liable.

Foster makes a series of arguments against holding it liable for the check under the presentment warranties in §§ 3-417(a)(2) and 4-208(a)(2). The court is not persuaded by these arguments.

Foster first argues that it should not be held liable because of Wachovia's contributing

negligence. Under § 5/3-406(a), "a person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument ... is precluded from asserting the alteration ... against a person who, in good faith, pays the instrument." 810 ILCS 5/3-406. Foster argues that Wachovia was negligent because Wachovia and MediaEdge entered into an agreement in which Wachovia did not sight examine MediaEdge's checks. Foster suggests that it was Wachovia's responsibility to identity the alteration and Wachovia's omission is a failure to exercise ordinary care under the Code.

However, if Wachovia was negligent for not catching the alteration then Foster is also negligent because it should have examined the face of the check with it processed the check. Foster also fails to provide citation to a case or Code section to support its position that Wachovia's actions fell below the standard of care required under the Code. The presentment warranties place the initial burden on Foster to catch any alteration since it is Foster who is warranting to Wachovia that there have been no alterations on the check. Foster's failure to demonstrate that what Wachovia did was a failure to exercise ordinary care means that Foster remains liable under the presentment warranties.

Foster's next argument is that this court must assume that the check was not altered but instead is a forgery. The finding of a forgery would mean that Foster would not be liable for breaching the presentment warranties because there was no alteration. Foster argues that it is entitled to a presumption that the check was forged because Wachovia has destroyed the original check. Wachovia argues that it destroyed the original check as part of its ordinary business practice of destroying checks within 30 days and retaining copies of the checks through computer imaging. (Dkt. No. 23, ¶¶ 16-18). Foster argues the destruction of the check requires a

presumption from the court that Wachovia deliberately destroyed the check.

A party can be entitled to a presumption that the opposing party destroyed original evidence because that evidence was harmful evidence. *DirectTV, Inc. v. Borow*, No. 03 C 2581, 2005 WL 43261, at *5 (N.D. Ill. Jan. 6, 2005). "The relevant issue is 'not that the evidence was destroyed, but rather, the reason for the destruction.'" *Id.* (citing *Park v. City of Chicago*, 297 F.3d 606, 616 (7th Cir. 2002)).

There is no indication that Wachovia destroyed the original check in order to eliminate unfavorable evidence. Wachovia retained an imagined copy of the check. It also destroyed the check as part of its ordinary business practice. There is no evidence that Wachovia singled out this check and treated it any differently from how it handles other checks under its document retention policy. The replacement of paper copies of checks with an imagined copy is not an uncommon practice in the banking industry. *See* 12 U.S.C. § 5003. Wachovia also destroyed the check before the dispute arose between Wachovia and Foster. Foster is not entitled to a presumption that Wachovia deliberately destroyed the check or that the check was a forgery.

Foster's last argument is that it cannot be held liable under the "Midnight Deadline Rule." 810 ILCS 5/4-402. The Midnight Deadline Rule is not applicable in this situation because it deals with the time frame for a bank to reject a check. In this case, Wachovia originally accepted the check within the Midnight Deadline. Wachovia's claim is through the unrelated matter of the breach of the presentment warranties.

The final issue for the court is the extent of Foster's liability to Wachovia. Wachovia is able to recover the amount that it paid on the check less the amount it received or the amount that it is entitled to receive from MediaEdge, Inc. 810 ILCS 5/3-417(b); 810 ILCS 5/4-208(b).

Wachovia is also "entitled to compensation for expenses and loss of interest resulting from the breach." *Id.* Wachovia has a right to receive the $133,026.00 it paid on the check plus appropriate interest, less any reimbursement owed to it from MediaEdge, from Foster.

Wachovia also wants its attorney's fees from this case and from the related case in New York in which it is defending against MediaEdge. The official comment to UCC §3-417 states that there is "no express provision for attorney's fees, but attorney's fees are not meant to be necessarily excluded." U.C.C. § 3-417 cmt. 5 (2005); *cf. First Nat. Bank in Harvey v. Colonial Bank*, 898 F. Supp. 1220, 1237 (N.D. Ill. 1995) (citing *Southern Provisions, Inc. v. Harris Trust & Sav. Bank*, 422 N.E.2d 33, 35 (Ill. App. Ct. 1981) ("In Illinois, it is within the trial court's discretion to award attorney's fees as expenses" for a breach of the Transfer Warranties under § 4-207(c)).

The court sees no reason to deviate from the traditional presumption under the American Rule that each side should bear its own attorney's fees. Furthermore, there was no reason for Wachovia to defend against the suit brought by MediaEdge in New York when Wachovia's theory was that Foster was liable under the breach of the presentment warranties. Wachovia is entitled to the $133,026.00 it paid on the check plus appropriate interest, less any reimbursement owed to it from MediaEdge, and nothing more.

## CONCLUSION

Based on the reasoning set forth above, Wachovia's motion for summary judgment of April 29, 2005 (Dkt. No. 21), is granted. Foster's motion for summary judgment of May 2, 2005 (Dkt. No. 24), is denied. The court relinquishes jurisdiction over the third-party complaint as there is no diversity of citizenship between the third-party plaintiff and third-party defendant and the third-party defendant remains unserved. Judgment is entered in favor of plaintiff Wachovia against defendant Foster. All pending motions are moot and all other previously set dates are vacated.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 9, 2005